W. F. GILLIES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 40964.   Promulgated August 14, 1930.

*Oscar William Swift, Esq.*, for the petitioner.
*P. A. Bayer, Esq.*, for the respondent.

OPINION.

STERNHAGEN: The petitioner in 1924 sold two properties for more than their cost, the price consisting of three items of payment, cash, the assumption of the first mortgage, and a promise to make deferred payments, secured by a purchase-money mortgage. Had the petitioner retained his position for the remainder of 1924, it would be necessary to consider whether his income from these sales was taxable in 1924 or spread by the installment method recognized by

section 212 (d), Revenue Act of 1926, made retroactive by section 1208, and the regulations pursuant thereto. *Dalraida Realty Co.,* 5 B. T. A. 905. But petitioner changed his position by disposing of the purchase-money mortgages and receiving instead the obligation on open account of the C. W. G. Corporation.

Petitioner seeks to have these two sets of transactions tied together and to have the open account excluded from his income because it was not cash, or, if not for that reason, because it was without market value. Each of these contentions must fail. The first transactions were completed in April and May. By no theory can they be projected into the later entirely separate transaction. Even if there had been a loss within the year from the later transaction, its only place in net income would be as an offsetting deduction against the gain already included in gross income. Unless there was some such deduction, the sales profit would remain in gross income to measure the net.

We find nothing in the evidence to establish a loss or other deduction. Treating the disposition of the purchase-money mortgages as an exchange for the open account of the C. W. G. Corporation, as for the purpose of the present problem it was, it can not be said that such account had no market value. It was a perfectly sound claim, upon which the corporation paid $20,000 within the year, and under section 202 its market value measures gain. From the balance sheet of December 1, 1924, introduced in evidence by petitioner, the corporation appears to have had assets of $298,619.59 with which to pay liabilities (including that of petitioner and excluding capital stock of $8,500) of $275,325.36, or over $85,000 with which to pay petitioner. There is no evidence of any weak or worthless items on the balance sheet. Two witnesses employed in the credit departments of large New York banks were shown the bare balance sheet and asked whether they would recommend loans to petitioner on the security of this claim. They testified that they would not, and this is said to prove a lack of market value. Without disregarding this testimony, we think it has not the significance which petitioner attributes to it. A bank employee might indeed disapprove a bank loan after a superficial investigation consisting only of this balance sheet with no description or analysis of its items, and yet the account may properly be regarded as entirely sound and of full value. This is more apparent when the valuation is being made as of December 31, a month later than the date of the balance sheet and after a payment has been made of $20,000.

*Judgment will be entered for the respondent.*